## B & M DIE COMPANY v FORD MOTOR COMPANY

Docket No. 93413. Submitted December 1, 1987, at Detroit. Decided March 9, 1988.

B & M Die Company brought an action in the Wayne Circuit Court, Susan D. Borman, J., against the Ford Motor Company alleging breach of an oral contract, unjust enrichment and wrongful interference with its business. Prior to trial, plaintiff withdrew its allegation of wrongful interference with its business. During trial, plaintiff withdrew its claim of breach of an oral contract. The jury found that defendant was unjustly enriched to the extent of $65,000 for services provided to it by plaintiff. Plaintiff appealed, alleging that the value of the benefit received by defendant for technical information supplied to defendant is the proper measure of plaintiff's damages for its claim of unjust enrichment. Defendant cross-appealed, alleging that plaintiff's unjust enrichment claim should have been decided by the court, that the evidence did not support the verdict and that the plaintiff's proofs and arguments were inflammatory and prejudicial.

The Court of Appeals *held:*

1. The trial court ruled that the technical information provided by plaintiff was not property for which plaintiff had a right to recover damages per se since it did not comply with the requirements of Michigan trade secret law. On the other hand, the court ruled that it would allow the jury to consider the benefit received by Ford as a result of receipt of this technical information in determining the amount by which defendant may have been unjustly enriched and instructed the jury accordingly. Plaintiff did not object to the jury instruction. No manifest injustice occurred and appellate review is foreclosed.

REFERENCES

Am Jur 2d, Equity §§ 86 *et seq.*; 238-244.

Am Jur 2d, Restitution and Implied Contracts, §§ 3, 4-10, 153.

Complexity of civil action as affecting Seventh Amendment right to trial by jury. 54 ALR Fed 733.

Right to jury trial in action for declaratory relief in state court. 33 ALR4th 146.

Nor was the verdict so clearly or grossly inadequate as to shock the judicial conscience.

2. It was proper for the jury to decide plaintiff's claim.

3. The issue of whether the verdict is against the great weight of the evidence is not preserved for appellate review where the party aggrieved did not move the trial court for a new trial. Defendant did not move for a new trial. The Court of Appeals declined to review defendant's claim that the evidence was inadequate.

4. The issue of the inflammatory and prejudicial nature of plaintiff's proofs and arguments was not properly before the Court of Appeals since defendant cited no relevant authority in its brief.

Affirmed.

1. EQUITY — UNJUST ENRICHMENT — DAMAGES.

A jury hearing a claim of unjust enrichment may properly consider the value of the benefit received by the defendant.

2. EQUITY — JURISDICTION — JURY.

Equity claims are heard by a judge sitting as a chancellor in equity; therefore, where only equitable relief is sought, there is no right to a trial by jury; however, where plaintiff seeks both equitable relief and legal relief in the form of damages, he has the right to have a jury hear his damage claim.

3. APPEAL — NEW TRIAL — PRESERVING QUESTION.

The issue of whether the verdict is against the great weight of the evidence is not preserved for appellate review where the party aggrieved did not move the trial court for a new trial.

*John R. Benefiel,* for plaintiff.

*Brooks & Kushman* (by *Ernie L. Brooks* and *Elizabeth F. Janoa*), for defendant.

Before: J. B. SULLIVAN, P.J., and CYNAR and R. J. TAYLOR,* JJ.

PER CURIAM. Plaintiff, B & M Die Company, filed suit against defendant, Ford Motor Company, in September, 1982, alleging in four counts breach of an oral contract, unjust enrichment and wrongful

---

* Circuit judge, sitting on the Court of Appeals by assignment.

interference with its business. In its second amended complaint, plaintiff withdrew Count IV alleging wrongful interference with its business. During trial, B & M withdrew Count I—breach of an oral contract. The case proceeded to the jury on two separate counts based on a claim of unjust enrichment. The jury returned a special verdict for B & M, finding that defendant was unjustly enriched to the extent of $65,000 for services provided to it by plaintiff. Plaintiff was also awarded $10,000 for cancelled purchase orders. The $10,000 award is not contested by either party on appeal. Plaintiff appeals and defendant cross-appeals as of right from the $65,000 jury verdict.

At trial, the evidence revealed that B & M was a small die manufacturing and die cutting company, established in 1962 by brothers, F. Moses and Billy Smith. In 1974, Moses formed a second company, IDA or Independent Die, which he ran without his brother's involvement. Moses, however, continued to retain a fifty percent interest in B & M. B & M ceased operation as a company in 1981 and liquidated its assets. During the period of time relevant to this case, B & M was a supplier of dies and services to Ford.

The events which led to the present action took place in late 1977 and early 1978. Prior to 1976, all "headliners" were created by a technique called "cut and sew." Headliners are the interior roof liners on passenger cars and light trucks. The cut and sew process consisted of hand cutting the ceiling material on tables and sewing it together on machines. It was then installed over metal bars attached to the roof.

In early 1976, Ford engineers commenced working on a new process and design for producing headliners. The process came to be known as "cut and score" headlining. This process involves two

stages. First, there is the lamination stage in which various layers of material are stacked and glued together. The second stage, steel rule die cutting, involves several subparts which are the subject of this litigation. Ford believed that this new process would be cost-effective since headliners could be produced more quickly with the use of less labor and they would be more aesthetically pleasing.

Ford engineers began experiencing difficulty with all phases of the cut and score headlining process. At trial, the extent of Ford's difficulty was heavily disputed. Plaintiff claimed that Ford was having serious problems in the cut and score phase of the process resulting in a fifty-eight percent scrap rate. Ford claimed that only normal "debugging" problems were encountered. As a result, Ford engineers enlisted B & M's assistance along with that of another company, PCI-Inmont, which was also in the business of making headliners.

It is undisputed that B & M spent approximately eighty hours at defendant's plant and that, together with PCI, repaired defendant's press. They installed new dies which were slightly off-center. They also installed some innovations which plaintiff had learned and developed through many years in the business. These additional technologies are at the crux of the parties' dispute. They include: (1) "elevator crush pads," which push the material out of the press so that it would not get caught and subsequently tear; (2) "balancing blocks," which were installed in the dies rather than on the press; and (3) a "make-ready system" which involved the use of adhesive shim stock which was attached to the die. Defendant offered testimony that these concepts were available and in use in the industry and were, thus, not novel ideas. However, Ford admitted that B & M's crush

pads had a unique feature developed specifically for the problem experienced by Ford. In addition, the make-ready system was different from anything currently being used in the industry. Some of Ford's witnesses indicated that the use of balancing blocks on this particular press was a new idea.

Plaintiff's witnesses testified that, as a result of B & M's assistance, the headliner project became much more efficient. The scrap rate was reduced considerably, resulting in substantial savings in assembly and labor. Plaintiff estimated that its technology caused Ford to realize a $2,000,000 profit. Ford disagreed and valued plaintiff's contribution as saving defendant a few weeks of time in solving the die cutting problems. Ford claimed that it would have gone to PCI for assistance if B & M had not been successful.

Between the time the headliner project became operational and July, 1980, B & M was the main source for die and repair services to Ford. In anticipation of much greater business, plaintiff expanded its operations by moving to a newer and larger location, purchasing new equipment and hiring new employees. In the interim, Moses Smith filed a patent infringement suit against Ford. After this suit was filed, B & M received no new business from defendant and many of the orders in progress were cancelled.

Following the presentation of evidence, the jury returned a verdict in favor of plaintiff and awarded B & M $65,000 for its unjust enrichment claim and $10,000 for the cancelled purchase orders.

The first issue disputed by the parties is whether the value of the benefit conferred upon defendant should be the proper measure of plaintiff's damages for a claim of unjust enrichment. Specifically,

plaintiff claims that it is entitled to the value of the benefit received by Ford for the technical information plaintiff supplied to Ford in regard to the headliner project. Ford, on the other hand, argues that plaintiff cannot recover under a theory of unjust enrichment for the technical information since the only properties entitled to protection are those commonly known as "trade secrets." It argues that, because this information was admittedly not given in confidence and, thus, not a trade secret, plaintiff's damages must be limited to the reasonable value of the services it provided defendant.

A person who has been unjustly enriched at the expense of another is required to make restitution to the other. Restatement Restitution, § 1, p 12. The process of imposing a "contract-in-law" or a quasi-contract to prevent unjust enrichment is an activity which should be approached with some caution. The essential elements of such a claim are (1) receipt of a benefit by the defendant from the plaintiff, and (2) which benefit it is inequitable that the defendant retain. *In re McCallum Estate,* 153 Mich App 328, 335; 395 NW2d 258 (1986).

In this case, defendant benefitted from plaintiff's services since plaintiff successfully solved defendant's problems with the headliner project. The only issue is whether plaintiff is entitled to recovery under a theory of unjust enrichment for the technical information provided to defendant. In support of its claim for compensation, plaintiff relies on several federal appeals court cases for the proposition that it is entitled to compensation under a theory of unjust enrichment for the technical information it provided to defendant. Plaintiff initially cites *City Ice & Fuel Co v Bright,* 73 F2d 461 (CA 6, 1934). In this case, Bright filed suit seeking compensation for information and data

furnished to City Ice for the purchase of certain ice plants and businesses. The complaint sought relief under an express contract and, in the alternative, under a quantum meruit claim. The case was submitted to the jury under the alternative theory. The Sixth Circuit upheld the jury verdict which included an award for the reasonable value of the services rendered including the information supplied by Bright to City Ice. *Id.,* p 464.

Next, plaintiff refers to *General Paint Corp v Kramer,* 68 F2d 40 (CA 10, 1933), and *Matarese v Moore-McCormack Lines, Inc,* 158 F2d 631 (CA 2, 1946), which held that one who voluntarily transferred property to another under a nonenforceable contract or with the reasonable expectation of compensation would be entitled to the reasonable value of his services which may be based upon cost savings to defendant. Both of these cases dealt with confidential relationships between an employer and an employee.

In the case at bar, the trial court ruled that the technical information provided by plaintiff was not property for which plaintiff had a right to recover damages per se since it did not comply with the requirements of Michigan trade secret law. On the other hand, the court ruled that it would allow the jury to consider the benefit received by Ford as a result of receipt of this technical information in determining the amount by which defendant may have been unjustly enriched. We find no error in the trial court's ruling prohibiting plaintiff from seeking compensation for the technical information on the theory that it was "property" subject to compensation. As Ford indicates, plaintiff's technical information was not a "trade secret" under Michigan law. See *Manos v Melton,* 358 Mich 500, 508; 100 NW2d 235 (1960).

However, the jury could properly consider under

a claim of unjust enrichment the value of the benefit received by Ford as a result of having this technical information. Ford benefitted from having this technical information since it utilized it in solving the problems associated with the headliner project. The jury did not award B & M compensation in the form of a patent or trade secret infringement as a result of the use of this information by Ford. Instead, in determining the value of the benefit received by Ford, the jury could consider the extent to which Ford benefitted by having this information. To this extent, we disagree with Ford's claim in its cross-appeal that the trial court clearly erred by not instructing the jury that the furnishing of this technical information by plaintiff to defendant should not be considered by the jury in determining the value of the benefit received by Ford. Ford did not lodge any specific objections to the court's instructions on this point. Thus, appellate review is foreclosed unless the complaining party has suffered manifest injustice. *Strach v St John Hospital Corp,* 160 Mich App 251, 281-282; 408 NW2d 441 (1987). We find no manifest injustice was suffered by Ford since the jury could properly consider the value of the benefit received by Ford as a result of this technical information. Hence, we find no error.

Moreover, the verdict is not so clearly or grossly inadequate or contrary to the great weight of the evidence as to shock our judicial conscience and warrant a new trial. See MCR 2.611(A)(1)(d) and (e).

In its cross-appeal, Ford raises several other alleged errors. First, Ford asserts that a claim for unjust enrichment is equitable and should be decided by the court rather than the jury. We disagree.

The parties have a constitutional right in Michi-

gan to have equity claims heard by a judge sitting as a chancellor in equity. *Abner A Wolf, Inc v Walch,* 385 Mich 253, 265-266; 188 NW2d 544 (1971). If a plaintiff seeks only equitable relief, he has no right to a trial by jury. *Robair v Dahl,* 80 Mich App 458, 460-462; 264 NW2d 27 (1978). However, in a case where plaintiff seeks both equitable relief and legal relief in the form of damages, a plaintiff has the right to have a jury hear his damage claim. *Dutka v Sinai Hospital of Detroit,* 143 Mich App 170, 173; 371 NW2d 901 (1985), lv den 424 Mich 891 (1986). In this case, since plaintiff was seeking money damages, it was entitled to a trial by jury. Defendant's argument to the contrary is meritless.

Next, Ford alleges that the evidence does not support the $65,000 verdict for the value of plaintiff's services, not including the value of the technical information. In making this argument, Ford asserts that the evidence established a maximum of eighty hours time expended by B & M, and that the services performed were assessed as having a market value of $45 per hour, so that plaintiff was solely entitled to $3,600 for the services rendered. Ford did not move for a new trial on the basis that the damage award was excessive or against the great weight of the evidence. Only where a party moves for a new trial before the trial court on the ground that the verdict is against the great weight of the evidence is this issue preserved for appellate review. *Armstrong v Woodland Mutual Fire Ins Co,* 342 Mich 666, 671-672; 70 NW2d 786 (1955). Defendant failed to make such a motion, and consequently we decline to review this claim.

Finally, Ford alleges that the proofs and arguments regarding the value of plaintiff's technical information were prejudicial and inflammatory requiring reversal of the jury verdict. We disagree.

As we noted earlier in this opinion, the jury could properly consider the value of the benefit resulting to defendant from the technical information in determining the value of the benefit provided by plaintiff to Ford. Moreover, this issue is not properly before the Court since defendant cited no authority in its brief other than trade secret cases which are not relevant. Accordingly, the verdict is affirmed.

Affirmed.