952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MORSE/DIESEL, INC., Plaintiff-Appellant,
v.
FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE, Defendant-Appellee.
 No. 91-1409.
 United States Court of Appeals, Sixth Circuit.
 Jan. 14, 1992.
 
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Morse/Diesel, Inc. ("Morse/Diesel") seeks to recover payment for construction work it performed on a project financed by First Wisconsin. Morse/Diesel claims that construction funds earmarked for its benefit were diverted to First Wisconsin in breach of contract and, in the alternative, that allowing First Wisconsin to retain the funds would constitute unjust enrichment. The district court granted summary judgment. We affirm.
 
 
 2
 * Warren Midway Associates ("Warren Midway") is a limited partnership that owns the Warren Midway Motor Lodge (the "Motor Lodge"). In August 1985, Warren Midway applied to First Wisconsin National Bank of Milwaukee ("First Wisconsin") for an eight million dollar construction loan. The funds were to be used to make improvements to the Motor Lodge, and the improved property was to serve as collateral for the loan. In October 1985, First Wisconsin issued a commitment letter offering to make the loan. The parties then decided to finance the project with Industrial Revenue Bonds issued by the State of Michigan. Under this arrangement, the State, through its agency the Michigan Strategic Fund, and Warren Midway entered into a loan agreement, which required the Strategic Fund to issue eight million dollars in bonds and Warren Midway to give a mortgage on the property to the Strategic Fund. The bonds were purchased by First Wisconsin. The loan agreement provided that the proceeds of the bond sale would be deposited into a construction fund and disbursed only to pay project costs. The Strategic Fund entered into a separate agreement, the Trust Indenture, with the First Wisconsin Trust Company ("FWTC") under which FWTC would administer the construction fund. Warren Midway also agreed to this arrangement in the Construction Fund Agreement. Specifically these agreements required FWTC approval of all payments to contractors made from the construction fund.
 
 
 3
 After securing financing, Warren Midway retained Morse/Diesel, Inc. as contractor on the construction project. Morse Diesel began work and submitted periodic progress payment requests, all of which were approved, less retainage by FWTC. On August 1, 1988, Warren Midway allegedly failed to make a required debt payment. This constituted a default under the loan agreement and caused FWTC to cease making disbursements from the construction fund.
 
 
 4
 Meanwhile, Morse/Diesel was unaware of Warren Midway's failure to meet its obligations under the loan agreement. As such, it continued working on the project and submitting payment requests. In September 1988, having received no progress payments since July, Morse/Diesel contacted First Wisconsin and was told that the cause was a "paperwork" problem with Warren Midway. Morse/Diesel continued working until it completed the project but received no further payments after July 1988.
 
 II
 
 5
 We review a district court's grant of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). This case is before us on diversity jurisdiction. Therefore, we must apply the laws of Michigan.[1] As to points of law on which the Michigan Supreme Court has been silent, we "must ascertain from all available data what the state law is and apply it." Bailey v. V & O Press Co., 770 F.2d 601, 604 (6th Cir.1985).
 
 
 6
 * Morse/Diesel claims that First Wisconsin has breached duties owed to Morse/Diesel as a third party beneficiary. A direct third party beneficiary stands in the shoes of the promisee and possesses the same right to enforce the contract. Mich.Comp.Laws § 600.1405.
 
 
 7
 Morse/Diesel asserts that it was a direct beneficiary of promises contained in the loan agreement, the trust indenture, the construction disbursement agreement, and the commitment letter. The loan agreement includes a provision that all money remaining in the construction fund after the project's completion date would first be applied to project costs. The trust indenture mandated the creation of a construction fund. All funds loaned for the construction project were to be deposited in the construction fund and, absent default, could only be expended for project costs. The construction disbursement agreement provided that contractors would be entitled to receive payment from the construction fund upon the performance of satisfactory work. Finally, the commitment letter included a promise to pay the loan proceeds to the construction contractors.
 
 
 8
 As a contractor, Morse/Diesel undeniably benefited from these promises. However, these promises do not render Morse/Diesel a direct third party beneficiary. First Wisconsin made these promises for its own benefit, specifically to protect itself against default. Each promise is aimed at ensuring that use of the loan funds would be limited to the purposes expressed in the loan agreement. This minimized the risk that the loan funds would be improperly disbursed and thus decreased the risk of default. Moreover, in the event of default, the contents of the construction fund were to be applied to the debt to First Wisconsin rather than to project costs. Where a promisor makes a promise solely for its own benefit, any benefit to other parties is indirect. Rieth-Riley Constr. Co. v. Department of Transp., 136 Mich App. 425, 432 (1984). Morse/Diesel was not a direct third party beneficiary and is not entitled to bring an action to enforce the above contracts.
 
 B
 
 9
 Michigan recognizes claims for unjust enrichment where the defendant receives a benefit from the plaintiff and it would be inequitable for the defendant to retain the benefit. B & M Die Co. v. Ford Motor Co., 167 Mich.App. 176, 181 (1988). It is clear that First Wisconsin received a benefit from Morse/Diesel. By improving the property that secured the obligation to First Wisconsin, Morse/Diesel's labor has decreased the risks to which First Wisconsin is exposed.
 
 
 10
 Morse/Diesel has failed to raise a question as to whether it would be equitable to allow First Wisconsin to retain this benefit. After Warren Midway's default, disbursements to Morse/Diesel from the construction fund were discontinued. Concerned over the cessation of construction fund disbursements, Morse/Diesel's Senior Vice President, Robert Schulz, contacted First Wisconsin Vice President Thomas Ennis. Ennis informed Schulz that payments were being withheld due to a problem with "paperwork." Morse/Diesel claims that this representation misled it into believing that the problem would be quickly resolved. In reliance on this representation, Morse/Diesel completed the project, conferring a benefit on First Wisconsin.
 
 
 11
 However, Schulz's deposition indicates that he understood Ennis to mean that Warren Midway was experiencing financial problems. The deposition also indicates that Schulz was uncertain of the nature and extent of Warren Midway's financial problems. Despite the discontinuance of payment and the amount of money at stake, Schulz failed to probe further. He did nothing to relieve his uncertainty and instead assumed the vague reference to paperwork meant that all was well.
 
 
 12
 The benefit to First Wisconsin resulted directly from Schulz's failure to make any attempt to allay his uncertainty and his unreasonable reliance on the "paperwork" statement, which he knew to signify financial problems. Under these circumstances, it is not inequitable for First Wisconsin to retain the benefit of Morse/Diesel's performance.
 
 III
 
 13
 For the foregoing reasons, we affirm the district court's judgment.
 
 
 
 1The loan agreement contains a choice-of-law clause that provides for the application of Michigan law.