**NAGLE INDUSTRIES, INC., Plaintiff**

v.

**FORD MOTOR COMPANY, Defendant.**

No. 95–75840.

United States District Court,
E.D. Michigan,
Southern Division.

June 16, 1997.

Michael R. Dinan, Jr., Troy, MI, for Plaintiff.

George Summerfield, Bloomfield Hills, MI, for Defendant.

**MEMORANDUM OPINION AND ORDER DENYING NAGLE'S MOTION TO VOLUNTARILY DISMISS WITHOUT PREJUDICE ITS UNFAIR COMPETITION CLAIMS; GRANTING FORD'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT ON THE ISSUE OF UNFAIR COMPETITION; DENYING FORD'S MOTIONS TO STRIKE PARAGRAPH 5 OF BARKER'S DECLARATION, PARAGRAPH 7 OF SCHMID'S DECLARATION, AND PARAGRAPH 2 OF COYNE'S DECLARATION; DENYING FORD'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF LOST PROFIT AND PRICE EROSION DAMAGES; AND DENYING FORD'S MOTION FOR RULE 11 SANCTIONS AGAINST NAGLE**

EDMUNDS, District Judge.

This matter comes before the Court on a plethora of pending motions: Defendant Ford Motor Co. ("Ford")'s motions (1) to dismiss or, in the alternative, for summary judgment on the issue of unfair competition;

(2) for summary judgment on the issue of lost profit and price erosion damages; (3) to strike paragraph 5 of Vincent L. Barker, Jr.'s declaration; (4) to strike paragraph 2 of Gerald Coyne's declaration; (5) to strike paragraph 7 of James T. Schmid's declaration; (6) for sanctions pursuant to Fed.R.Civ.P. 11; and (7) Plaintiff Nagle Industries, Inc. ("Nagle")'s motion to dismiss without prejudice its unfair competition claims pursuant to Fed.R.Civ.P. 41(a)(2). These motions are addressed in logical as opposed to chronological order.

The Court (1) **DENIES** Nagle's motion to have its unfair competition claims voluntarily dismissed without prejudice at this late stage in the litigation when a dispositive motion is pending before the Court; (2) **GRANTS** Ford's motion to dismiss or for summary judgment on the issue of unfair competition because Nagle's common law misappropriation claims are preempted by federal patent law, Nagle has not met its summary judgment burden on its remaining common law claims and has not persuaded the Court that its unfair competition claims fall within the scope of the Michigan Consumer Protection Act; (3) **DENIES** as moot Ford's motions to strike paragraph 5 of Barker's declaration, paragraph 7 of Schmid's declaration, and paragraph 2 of Coyne's declaration; (4) **DENIES** as moot Ford's motion for summary judgment on the issue of lost profit and price erosion damages; and (5) **DENIES** Ford's motion for Rule 11 sanctions against Nagle because Ford's motion does not satisfy the "safe harbor" provisions of Rule 11.

## I. Background

Nagle filed suit in November 1995 against Ford alleging claims of patent infringement (Count I) and unfair competition (Count II). Ford filed a counterclaim alleging that Nagle's United States Patent No. 5,129,281 ("the '281 patent") is invalid. Ford subsequently filed three motions for summary judgment addressing, respectively, Nagle's infringement claims, its unfair competition claims, and its damage claims. Ford's motion for summary judgment of noninfringe-

ment was granted by the Court on March 13, 1997, and Count I of Nagle's complaint was dismissed. The remaining motions pending before the Court require it to determine whether Nagle's unfair competition and damage claims should be summarily dismissed with or without prejudice, whether challenged testimony should be stricken, and whether sanctions should be imposed against Nagle.

## II. Analysis

### A. Nagle's Rule 41(a) Motion for Voluntary Dismissal Without Prejudice

Nagle seeks to have its unfair competition claims voluntarily dismissed without prejudice. Nagle argues Ford's federal law counterclaim is not an impediment because the claim can remain for independent adjudication by the Court. Nagle further argues that, in light of its willingness to dismiss with prejudice its Lanham Act claims, this court's jurisdiction over its state law unfair competition claims is questionable. Ford opposes Nagle's motion, arguing that Nagle's request should not be granted at this late stage in the litigation, after extensive discovery has been completed, and when Ford has a motion for summary judgment pending on its claims. Ford further argues that even if Nagle's claims were concerned only with state law, the Court may properly exercise its discretion and retain jurisdiction in the interests of judicial economy, convenience, and fairness. The Court agrees and **DENIES** Nagle's motion.

The decision whether to grant a request for voluntary dismissal under Fed.R.Civ.P. 41(a)(2) rests within the sound discretion of the court. *Grover by Grover v. Eli Lilly and Co.*, 33 F.3d 716, 718 (6th Cir.1994). "The primary purpose of the rule in interposing the requirement of court approval is to protect the nonmovant from unfair treatment." *Id.*[1] Denial of Nagle's motion is appropriate because this action: (1) includes a federal counterclaim; (2) requires the court to determine whether Nagle's state law claims are preempted by federal patent law; (3) has

---

1. The filing of an answer or a motion for summary judgment triggers the need for court approval of a voluntary dismissal. Fed.R.Civ.P. 41(a)(1). Ford has filed both here.

been pending in this court for about one and one-half years; (4) has had extensive discovery completed; (5) has required Ford to spend a substantial amount of time, effort, and expense in defending; and (6) had Ford's motions for summary judgment pending and scheduled for hearing before Nagle's Rule 41(a)(2) motion was even filed. *Id.* at 718–19. *See also Ali v. St. John Hospital,* 836 F.2d 549 (Table, Text in Westlaw), 1987 WL 30582, *1 (6th Cir.1987) (where the court reversed the district court's grant of a voluntary dismissal without prejudice and held that "[u]nder such circumstances, denial of a motion for voluntary dismissal is the norm"); *Pace v. Southern Express Co.,* 409 F.2d 331, 334 (7th Cir.1969); *Scallen v. Minnesota Vikings Football Club,* 574 F.Supp. 278 (D.Minn.1983). The Court is not persuaded by Nagle's arguments that it cannot exercise its discretion and retain jurisdiction over Nagle's state law unfair competition claims in the interests of judicial economy, fairness and convenience. *See Textile Deliveries, Inc. v. Stagno,* 52 F.3d 46, 49 (2nd Cir.1995). A contrary result is not dictated by *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (where the Court observed "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . Its justification lies in considerations of judicial economy, convenience and fairness to litigants").

## B. Ford's Motion to Dismiss or for Summary Judgment on the Issue of Unfair Competition

Nagle's unfair competition claims are based on Michigan common and statutory law.[2] Ford's motion to dismiss or for summary judgment, brought pursuant to Fed. R.Civ.P. 12(b)(6) and 56, argues that Nagle has failed to assert a claim upon which relief can be granted, and, alternatively, argues

that Nagle's unfair competition claims should be dismissed because Nagle has not met its burden by demonstrating that genuine issues of material fact remain for trial.

In support of its common law unfair competition claims, Nagle argues that Michigan has adopted, as one branch of its unfair competition law, the common law tort doctrine of misappropriation recognized by the United States Supreme Court in *International News Service v. Associated Press,* 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918) (*"I.N.S."*). It further argues that Ford is liable under this tort theory because, rather than adding Nagle as a supplier, Ford stole Nagle's '281 patented invention, and even before the '281 patent issued, Ford misappropriated or stole Nagle's creation and development of the pull-pull cable assembly concept embodied in its '281 patent.[3] Ford responds that Nagle's state law misappropriation claims are synonymous with its claims of patent infringement and thus are preempted by federal patent law. As to Nagle's remaining allegations of unfair competition, Ford contends these should likewise be dismissed because there is no evidence (1) Ford willfully disregarded or told others to disregard Nagle's '281 patent; (2) Ford contacted or collaborated with suppliers to deprive Nagle of its legitimate business relationships or expectations; (3) Ford claimed title to the Nagle '281 patent; or (4) Ford threatened or asserted an infringement action against a user of the '281 patent.

In support of its statutory unfair competition claims, Nagle argues that Ford violated the Michigan Consumer Protection Act, Mich.Comp.Laws Ann. § 445.903; Mich.Stat. Ann. § 19.418(3) by (1) asserting the Ford accused device does not infringe Nagle's '281 patent; and (2) obtaining the Ford '866 patent on a pull-pull cable assembly that is the

---

**2.** Nagle in its complaint and in its briefs asserted a claim under the Lanham Act, 15 U.S.C. § 1126(i). At oral argument, Nagle informed the Court and Ford that it was unconditionally abandoning its Lanham Act claim and agreed to a dismissal with prejudice.

**3.** In particular, Nagle argues: (1) Ford misappropriated and willfully disregarded and infringed Nagle's '281 patented invention; (2) Ford's

conduct deprived Nagle of business relationships that would have provided benefit to Nagle; and (3) Ford "exacerbated the problem" when Nagle confronted it with its infringement claims and Ford refused to agree to "resolve the issue" by having Nagle supply Ford with the '281 patented device, and instead replied "Ford did not see a problem with the Nagle patent." Coyne Decla., Para. 2.

same invention as that embodied in Nagle's '281 patent and thus confusing customers as to whether Ford or Nagle has exclusive rights regarding the Nagle invention. Ford, relying on *Robertson v. State Farm Fire and Cas. Co.*, 890 F.Supp. 671, 678–81 (E.D.Mich.1995), responds that Nagle's claims do not fall within the scope of the Michigan Consumer Protection Act.

The Court **GRANTS** Ford's motion to dismiss or for summary judgment. Nagle's unfair competition claims based on the common law misappropriation doctrine are preempted by federal patent law. To the extent they are not preempted, Nagle's remaining common law claims of unfair competition are dismissed because Nagle has not come forward with competent evidence to support them. Nagle's unfair competition claims brought pursuant to the Michigan Consumer Protection Act, Mich.Comp.Laws Ann. § 445.903; Mich.Stat.Ann. § 19.418(3) likewise fail because Nagle has not persuaded the Court that they fall within the scope of the Act's protection.

### 1. Standard of Review

A Rule 12(b)(6) motion to dismiss "looks only to the pleadings, and factual allegations in the complaint must be taken as true. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). Plaintiff's complaint will be dismissed only [sic] it is clear that no relief could be granted under any set of facts that could be proven in support of this claim. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)." *Doran v. McGinnis*, 158 F.R.D. 383, 385 (E.D.Mich.1994).

Because the parties have presented matters outside the pleadings which have not been excluded by the Court, Ford's motion to dismiss is treated as one for summary judgment and is disposed of as provided in Rule 56. *See* Fed.R.Civ.P. 12(b); *Doran*, 158 F.R.D. at 385–86. Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### 2. Analysis

#### a. Michigan Common Law Claim—Misappropriation Doctrine

##### i. General Principles

In *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918), the Supreme Court "recognized a common law tort of 'misappropriation' that afforded protection against the appropriation by a competitor of commercially valuable information otherwise in the public domain." Restatement (Third) of Unfair Competition § 38 at 410 (1995). The International News Service, "which was barred for political reasons by British censors from cabling its reports of the First World War to the United States, provided war coverage to the readers of its papers by buying early editions of [Associated Press] papers and either copying or paraphrasing the A.P. reports in its own later editions. A.P. objected to this use of its stories, even though the stories were not copyrighted." *U.S. Golf Ass'n v. St. Andrews Systems, Data–Max, Inc.*, 749 F.2d 1028, 1035 (3d Cir.1984). The Supreme Court "acknowledg[ed] the public's right to copy the uncopyrighted news reports," but "held that the appropriation of news by a competitor for use in direct competition with the originator was actionable as unfair competition." Restatement (Third) of Unfair Competition § 38 at 411.

Commentators and courts have observed that, despite the broad language of the *I.N.S.* decision and its frequent citation, "it has been sparingly applied"; and, despite its longevity, "the decision has had little enduring

effect." *Id.* at 410. "Although the decision appears to rest on a rationale of unjust enrichment potentially applicable to a wide range of competitive conduct, subsequent decisions have recognized that broad application of the unjust enrichment rationale in a competitive marketplace would unreasonably restrain competition and undermine public interest in access to valuable information." *Id.* at 412. *See also St. Andrews Systems,* 749 F.2d at 1035–36 (observing that the courts struggled for years to define the limits of the broad *I.N.S.* language and the doctrine largely survived "in the context of factual situations very close to that of *I.N.S.*"). Citing the "limited extent to which the *I.N.S.* rationale has been incorporated into the common law of the states",[4] commentators advise that the *I.N.S.* decision "is properly viewed as a response to unusual circumstances rather than as a statement of generally applicable principles of common law." Restatement (Third) of Unfair Competition § 38 at 412.

In addition, despite the broad language of *I.N.S.*, subsequent decisions by the Supreme Court have clarified that (1) "no general rule of law prohibits the appropriation of a competitor's ideas, innovations, or other intangible assets once they become publicly known"; and (2) "federal patent and copyright statutes now preempt a considerable portion of the domain in which the common law tort [of misappropriation] might otherwise apply." *Id.* at 411.

Because Ford argues that Nagle's common law misappropriation claims are synonymous with its patent infringement claims and thus are preempted by federal patent law, this Court must consider the preemptive scope of the federal patent laws. The Supreme Court has provided some guidelines.

The Court has "made clear that state regulation of intellectual property must yield to the extent that it clashes with the balance struck by Congress in our patent laws." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 152, 109 S.Ct. 971, 978, 103 L.Ed.2d 118 (1989). The Patent Clause of the Constitution "itself reflects a balance

between the need to encourage innovation and the avoidance of monopolies which stifle competition without any concomitant advance in the 'Progress of Science and useful Arts.'" *Id.* at 146, 109 S.Ct. at 975. Likewise, "[f]rom their inception, the federal patent laws have embodied a careful balance between the need to promote innovation and the recognition that imitation and refinement through imitation are both necessary to invention itself and the very lifeblood of a competitive economy." *Id.*

To achieve the necessary balance, "the federal patent scheme creates a limited opportunity to obtain a property right in an idea. Once an inventor has decided to lift the veil of secrecy from his work, he must choose the protection of a federal patent or the dedication of his idea to the public at large." *Id.* at 149, 109 S.Ct. at 976. "The federal patent system ... embodies a carefully crafted bargain for encouraging the creation and disclosure of new, useful, and nonobvious advances in technology and design in return for the exclusive right to practice the invention for a period of years." *Id.* at 150–51, 109 S.Ct. at 977. After exclusive enjoyment for seventeen years, "'the knowledge of the invention inures to the people, who are thus enabled without restriction to practice it and profit by its use.'" *Id.* at 151, 109 S.Ct. at 977 (quoting *United States v. Dubilier Condenser Corp.,* 289 U.S. 178, 186–187, 53 S.Ct. 554, 557, 77 L.Ed. 1114 (1933)). Likewise, if the inventor "lifts the veil of secrecy from his work," yet fails to seek "the protection of a federal patent," the public has the right to copy and profit from his invention. *Bonito Boats,* 489 U.S. at 149, 151, 109 S.Ct. at 976, 977.

The Supreme Court emphasized in *Bonito Boats* that "[t]he attractiveness of such a bargain, and its effectiveness in inducing creative effort and disclosure of the results of that effort, depend almost entirely on a backdrop of free competition in the exploitation of unpatented designs and innovations.... The offer of federal protection from competitive exploitation of intellectual property

---

4. "After the Supreme Court's decision in *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), misappropriation became

a question of state, rather than federal law." *St. Andrews Systems,* 749 F.2d at 1036.

would be rendered meaningless in a world where substantially similar state law protection were readily available. To a limited extent, the federal patent laws must determine not only what is protected, but also what is free for all to use." *Bonito Boats,* 489 U.S. at 151, 109 S.Ct. at 977.

These principles were observed in the companion cases of *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and *Compco Corp. v. Day–Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). There, the Court concluded that a state law unfair competition claim that provided unlimited protection against copying of "an unpatentable item whose design had been fully disclosed through public sales" was preempted because it conflicted with "the federal policy embodied in the patent laws." *Bonito Boats,* 489 U.S. at 153, 109 S.Ct. at 978. The Supreme Court has subsequently cautioned, however, that "while *Sears* speaks in absolutist terms," it should not be read to infer that "all state regulation of potentially patentable but unpatented subject matter is [ ] *ipso facto* preempted by the federal patent laws", and it does not preclude "the States from regulating the deceptive simulation of trade dress or the tortious appropriation of private information." *Id.* at 154–55, 109 S.Ct. at 979. That latter principle was observed by the Court in *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974).

In *Kewanee,* the Court concluded that state law protection for trade secrets, even though they were "ideas which clearly fell within the subject matter of patent," did not "conflict with the federal policies of encouragement of patentable inventions and the prompt disclosure of such innovations." *Bonito Boats,* 489 U.S. at 155, 109 S.Ct. at 979–80. The *Kewanee* Court based its decision on three key factors: (1) trade secrets are by their nature secret, therefore, state law protection does not violate federal policy "that matter once in the public domain must remain in the public domain"; (2) state law trade secret protection is weaker than federal law patent protection; e.g., the public is "free to discover and exploit the trade secret through reverse engineering of products in the public domain or by independent creation" and thus state protection does not "conflict with either encouragement or disclosure policies of the federal patent law"; and (3) state trade secret laws seek to protect an interest; e.g., privacy and protection against industrial espionage, not considered by Congress when enacting the patent laws. *Bonito Boats,* 489 U.S. at 155–56, 109 S.Ct. at 980.

Recently, in *Bonito Boats,* the Court reaffirmed its *Sears* and *Compco* decisions and emphasized "the States may not offer patent-like protection to intellectual creations which would otherwise remain unprotected as a matter of federal law." *Id.* at 156, 109 S.Ct. at 980. It concluded that a Florida state law, which prohibited the use of a specific process for duplicating unpatented boat hulls, ran "afoul of the teaching of our decisions in *Sears* and *Compco.*" *Id.* at 157, 109 S.Ct. at 981. The Court criticized the Florida statute, finding it did not "operate to prohibit 'unfair competition' in the usual sense that the term is understood", and observed that

> [t]he law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting *consumers* from confusion as to source. While that concern may result in the creation of "quasi-property rights" in communicative symbols, the focus is on the protection of consumers, not the protection of producers as an incentive to product innovation.... The "protection" granted a particular design under the law of unfair competition is thus limited to one context where consumer confusion is likely to result; the design "idea" itself may be freely exploited in all other contexts.

*Id.* at 157–58, 109 S.Ct. at 981 (emphasis in original).

By "aim[ing] directly at preventing the exploitation of the design and utilitarian conceptions embodied in the product itself", the challenged Florida statute impermissibly "endow[ed] the original boat hull manufacturer with rights against the world, similar in scope and operation to the rights accorded a federal patentee" and "offer[ed] this protection for an unlimited number of years to all boat hulls and their component parts, without regard to their ornamental or technological

merit." *Id.* at 158–59, 109 S.Ct. at 981. The statute also conflicted with the Court's decisions in *Sears, Compco,* and *Kewanee,* because it "offer[ed] protection beyond that available under the law of unfair competition or trade secret, without any showing of consumer confusion, or breach of trust or secrecy"; offered "patent-like protection for ideas deemed unprotected under the present federal scheme"; and "conflict[ed] with the strong federal policy favoring free competition in ideas which do not merit patent protection." *Id.* at 167–68, 109 S.Ct. at 986 (internal quotes and citations omitted). Accordingly, the Court held the statute was "preempted by the Supremacy Clause." *Id.* at 168, 109 S.Ct. at 986.

### ii. Application of Preemption Principles

█ The question presented here is whether Nagle's common law claims of misappropriation are preempted by federal patent law. Assuming, arguendo, that the Michigan courts have adopted the misappropriation doctrine announced in *I.N.S.,* the Court nonetheless concludes that Nagle's claims are preempted and thus must be dismissed.[5]

Initially, the Court notes that Nagle has not identified, alleged, or argued that Ford misappropriated any of its trade secrets. Rather, Nagle invokes the common law misappropriation doctrine first announced in *I.N.S.* and argues that Ford is liable under that doctrine because it stole and copied Nagle's patented invention as well as the time, effort, and talent that went into creating and developing the patented invention. The Court finds that Nagle's misappropriation claims are nothing more than a reformulation of its previously dismissed patent infringement claims. Accordingly, they are dismissed as preempted by federal patent law.

Nagle's common law misappropriation claims are not qualitatively different from its patent infringement claims. They do not seek to protect an interest not considered by Congress when enacting the federal patent laws or contain an element not shared by the federal patent laws; e.g., confusion as to source (present in trademark infringement cases) or the breach of a confidential relationship (present in trade secret cases). *See Summit Machine Tool Mfg. Corp. v. Victor CNC Systems, Inc.,* 7 F.3d 1434, 1439–40, 1442 (9th Cir.1993) (where the court held plaintiff's complaint that defendant "misappropriated the fruits of its labor by marketing [plaintiff]'s lathe with [defendant]'s name on it" was "really a claim for reverse palming off" and thus was not preempted by federal law, but "to the extent that [plaintiff] may complain that [defendant] has 'pirated' its

5. It is not clear that the Michigan courts have adopted the tort law doctrine of misappropriation recognized in *I.N.S.* Contrary to Nagle's assertion, the Michigan Supreme Court in *Clipper Belt Lacer Co. v. Detroit Belt Lacer Co.,* 223 Mich. 399, 194 N.W. 125 (1923), declined plaintiff's request to apply the misappropriation doctrine announced in *I.N.S.* and refused to hold the defendant liable under that doctrine for copying and selling unpatented belt-lacing hooks designed to fit plaintiff's machinery. The *Clipper Belt* Court observed that "if [plaintiff] can prevent dealers in lacing hooks from putting on the market ganged hooks spaced the same as those it sells, it is as well or better off than if its spacing was a monopoly legalized by a patent. An injunction such as asked for [plaintiff] would have the practical effect of putting plaintiff in as good a position with a longer period of absolute control of its arbitrarily selected spacing than as though it were protected by a patent, which must eventually expire." *Id.* at 415, 194 N.W. 125.

More recently, in *B & M Die Co. v. Ford Motor Co.,* 167 Mich.App. 176, 421 N.W.2d 620 (1988), the Michigan Court of Appeals considered wheth-

er the plaintiff was entitled to recover under a theory of unjust enrichment for the use of technical information that it had provided to defendant Ford. The Court of Appeals held the trial court had not erred when it "prohibit[ed] plaintiff from seeking compensation for the technical information on the theory that it was 'property' subject to compensation." *Id.* at 182, 421 N.W.2d 620. The court then determined that the jury's consideration and award of compensation for the value of the technical information used by Ford under a theory of unjust enrichment did not constitute manifest injustice after emphasizing the fact that "[t]he jury did not award [plaintiff] compensation in the form of a patent or trade secret infringement as a result of the use of this information by Ford." *Id.* at 183, 421 N.W.2d 620.

*But see A & M Records, Inc. v. M.V.C. Distributing Corp.,* 574 F.2d 312 (6th Cir.1978) where the Sixth Circuit concluded the Michigan Supreme Court would follow *I.N.S.* and other commercial misappropriation cases and find the unauthorized duplication and distribution of uncopyrighted, bootleg music recordings was actionable as a common law claim for unfair competition.

lathe by employing a particularly unfair method of copying, such a claim is preempted by federal law").

The same is true for Nagle's claim that Ford has misappropriated the time, talent and effort it expended in creating and developing its idea for the '281 patented invention. *See Summit,* 7 F.3d at 1440. *See also Del Madera Properties v. Rhodes and Gardner, Inc.,* 820 F.2d 973, 976–77 (9th Cir.1987) (where, in the context of a copyright infringement case, the court concluded that "effort expended to create a Tentative Map and supporting documents is effort expended to create tangible works of authorship" and "[a]s such, this effort is within the scope of copyright protection"). Effort expended by Nagle to create its pull-pull cable assembly concept is effort expended to create its '281 patented invention; and, as such, falls within the scope of patent protection. Ford's alleged misappropriation of Nagle's creation and development of the pull-pull cable concept is accomplished by its copying of Nagle's patented invention. "That is precisely the type of misconduct the [patent] laws are designed to protect." *Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F.Supp. 1523, 1535, 225 U.S.P.Q. 776, 784 (S.D.N.Y.1985) (where, in the context of a copyright infringement case, the court rejected as preempted a common law unfair competition/misappropriation claim alleging that the defendant had misappropriated plaintiff's time, effort and talent when it copied her snowflake design for a Christmas ornament).

Courts considering claims similar to Nagle's have observed that "[i]f copying the [patented invention] or the plans for the [patented invention] in itself infringes the state-created right, then the state-created right is preempted." *Summit,* 7 F.3d at 1440. Accordingly, because copying Nagle's patented invention or the concepts embodied in the invention would infringe a state-created right under the misappropriation doctrine Nagle relies upon, this Court concludes that Nagle's misappropriation claims are preempted by federal patent law. The interests Nagle seeks to protect under state law have already been fully addressed by Congress in the federal patent laws. Recognition of Nagle's

common law misappropriation claims here would not only improperly endow Nagle with "rights against the world, similar in scope and operation to the rights accorded a federal patentee," *Bonito Boats,* 489 U.S. at 158–59, 109 S.Ct. at 981, it would also endow Nagle with greater rights because the common law claims would afford Nagle patent-like protection for an unlimited number of years.

### iii. Nagle's Remaining Common Law Claims of Unfair Competition

█ To the extent they are not preempted by federal patent law, Nagle's remaining common law claims of unfair competition are also dismissed. First, Nagle has not presented the Court with any legal support for its claim that a willful disregard or advice to others to disregard Nagle's '281 patent would create a cause of action for unfair competition under Michigan law not preempted by federal patent law. Even if Nagle had presented legal support for such a claim, it would still be dismissed because Nagle has not come forward with any credible evidence that Ford willfully disregarded Nagle's '281 patent or told others they could do so. *See* T. Nagle Dep. at 38, 40–43 and this Court's January 7, 1997 order.

Contrary to Nagle's arguments, paragraph 2 of Coyne's Declaration does not give rise to the inference that Ford willfully disregarded Nagle's '281 patent. Coyne's testimony is that a Ford representative told him Ford would not buy Nagle's pull-pull cable assembly and did not "see a problem with the Nagle patent." In addition, when considered along with Ford's evidence that its patent counsel had, shortly after being confronted with Nagle's claim of infringement, reviewed the accused Ford device and concluded it did not infringe Nagle's patent, this testimony supports Ford's position that it believed there was no problem with Nagle's '281 patent because it believed there was no infringement. It does not support Nagle's position that Ford willfully disregarded the '281 patent.

Similarly, there is no evidence that Ford contacted and/or collaborated with suppliers to deprive Nagle of its legitimate business relationships or expectations. *See* T. Nagle

Dep. at 34–37. Accordingly, Nagle's unfair competition claims based upon these unsupported allegations are dismissed.

■ Finally, the Court rejects Nagle's unfair competition claims based upon allegations that Ford's '866 patent is too broad; that it covers Nagle's '281 patented invention; and that it therefore allows Ford to improperly claim title to and threaten patent infringement action against users of the Nagle '281 patent. Nagle attempts to use Paragraph 5 of Barker's Declaration to raise claims about the Ford '866 patent not asserted in its complaint. There is no allegation or evidence that Ford has threatened or asserted claims of infringement of its '866 patent against users of Nagle's '281 patent. Accordingly, there is no case or controversy as to this claim, and the issue is not ripe for judicial consideration.

Nagle's reliance on *Schwanbeck Bros. v. A. Backus, Jr. & Sons, Inc.*, 148 Mich. 508, 111 N.W. 1046 (1907) is misplaced. The *Schwanbeck* Court upheld an unfair competition claim against defendant because plaintiff had presented the court with evidence that defendant had interfered with its business relationships by threatening its customers with a patent infringement action if they purchased plaintiff's products, even though there was no court finding of infringement. Here, there is no evidence that Ford interfered with Nagle's business relationships by threatening its customers with a patent infringement action if they purchased Nagle's '281 patented invention.

Even if the matter were ripe, Nagle's claims would still be subject to dismissal because Paragraph 5 of Barker's Declaration contains conclusory statements that are "wholly insufficient to raise a genuine evidentiary dispute for a jury." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1578 (Fed.Cir.1989).

### b. Michigan Statutory Law

■ Nagle asserts an unfair competition claim under Michigan's Consumer Protection Act, Mich.Comp.Laws Ann. § 445.903; Mich. Stat.Ann. § 19.418(3), and alleges that Ford violated the Act by (1) asserting the Ford accused device does not infringe Nagle's '281 patent; and (2) obtaining the '866 patent on a pull-pull cable assembly that copies Nagle's '281 patented invention and thus confuses customers as to whether Ford or Nagle has exclusive rights regarding the invention embodied in Nagle's '281 patent. Nagle's claim fails for a number of reasons.

■ The Michigan Consumer Protection Act is designed to protect a certain class of consumers and thus does not apply unless the acts complained of involve the sale of goods, services, or property used primarily for personal, family or household purposes. *Robertson v. State Farm Fire and Cas. Co.*, 890 F.Supp. 671, 678–81 (E.D.Mich.1995). Nagle has not presented any legal authority or evidence that would show the acts it complains of here fall within the protective scope of the Michigan Consumer Protection Act. Even if the Act did afford Nagle protection under these facts, Nagle has not presented any evidence to support its claim that customers were or will be confused as to the source or quality of the accused Ford device installed in their vehicles. Accordingly, Nagle's claim of unfair competition brought pursuant to the Michigan Consumer Protection Act is dismissed.

### 3. Conclusion

For the foregoing reasons, Nagle's claims of unfair competition brought pursuant to Michigan common law and Michigan statutory law are dismissed.

### C. Ford's Motions to Strike

Ford argues that pursuant to Fed.R.Civ.P. 26(a) and 37(c), the testimony in paragraph 5 of Vincent Barker's declaration and paragraph 7 of James T. Schmid's declaration should be struck because it goes beyond the scope of their expert reports.[6] Ford further argues that paragraph 2 of Coyne's declaration should be struck because it impermissibly attempts to introduce testimony contrary to this Court's January 7, 1997 order where

---

6. Ford also argues that paragraph 7 of Schmid's declaration should be struck because it asserts irrelevant and non-responsive information, is based on unsupported information and data, is based upon hearsay and does not satisfy Fed. R.Civ.P. 56(e)'s requirements.

it observed that Mr. Terrence Nagle, designated by Nagle as its Rule 30(b)(6) witness most knowledgeable about its unfair competition claim, "has no personal knowledge of any statements by Ford employees that Ford could or should disregard the '281 patent." 1/7/97 Order.

Ford's motions to strike are **DENIED** as moot. The Court has determined that Nagle's claims should be dismissed regardless of this challenged testimony.

### D. Ford's Motion for Summary Judgment on the Issue of Lost Profit and Price Erosion Damages

Because this Court has dismissed Nagle's claims of patent infringement and unfair competition, it **DENIES** as moot Ford's motion for summary judgment on the issue of lost profits and price erosion damages.

### E. Ford's Rule 11 Motion for Sanctions

Ford's motion for sanctions brought pursuant to Fed.R.Civ.Pro. 11 argues that both Nagle's patent infringement claims and its unfair competition claims were brought by Nagle without any basis under existing law and without presenting any nonfrivolous arguments for the extension, modification, or reversal of existing legal precedent. The Court **DENIES** Ford's motion because it does not satisfy the "safe harbor" provisions of Rule 11, as amended in 1993.

In *Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir.1997), the court observed that (1) the 1993 amendments to Rule 11 "makes the imposition of sanctions for violations discretionary, rather than mandatory" and "de-emphasizes monetary sanctions and discourages direct payouts to the opposing party"; (2) the 1993 amendments added procedural requirements that must be satisfied before sanctions can be imposed; (3) Rule 11(c)(1)(A) requires a party seeking sanctions to first serve their motion "on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court"; and (4) Rule 11(c)(1)(A) provides that motions for sanctions cannot be filed with the court if the "challenged paper, claim, defense, contention, allegation, or denial is withdrawn or appropriately corrected"

and thus "the offending party can avoid sanctions altogether by withdrawing or correcting the challenged document or position after receiving notice of the allegedly violative conduct." *Id.* at 294. The *Ridder* Court further observed that,

> [b]y virtue of the fact that under the 1993 amendments, a Rule 11 motion cannot be made unless there is some paper, claim, or contention that can be withdrawn, it follows that a party cannot wait to seek sanctions until after the contention has been judicially disposed. A party must now serve a Rule 11 motion on the allegedly offending party at least twenty-one days prior to conclusion of the case or judicial rejection of the offending contention. If the court disposes of the offending contention before the twenty-one day "safe harbor" period expires, a motion for sanctions cannot be filed with or presented to the court. Any other interpretation would defeat the rule's explicit requirements.

*Id.* at 295 (internal quotes and citations omitted). Applying these principles in *Ridder*, the court held that "a party cannot wait until after summary judgment to move for sanctions under Rule 11." *Id.* at 295. "By delaying the motion until after summary judgment was granted, [the defendant] deprived [plaintiff]'s counsel of the "safe harbor" to which the rule says he is entitled." *Id.* at 295.

#### 1. Sanctions as to Nagle's Patent Infringement Claims

■ This Court granted Ford's motion for summary judgment of noninfringement and dismissed Nagle's patent infringement claims on March 13, 1997. Ford served Nagle with its Rule 11 motion for sanctions on March 26, 1997; after summary judgment had been granted. Because Ford did not comply with Rule 11's twenty-one day "safe harbor" procedural requirements before filing its motion for sanctions as to Nagle's patent infringement claims, sanctions cannot be awarded.

#### 2. Sanctions as to Nagle's Unfair Competition Claims

■ Ford waited twenty-one days after serving Nagle with its Rule 11 motion for sanctions before filing it with this Court on

April 16, 1997. Nagle, however, prior to the expiration of the twenty-one days provided under Rule 11's safe harbor provisions, both informally and formally, offered to withdraw its challenged unfair competition claims. In an April 8, 1997 letter, Nagle's counsel offered to dismiss those claims without prejudice. In light of Ford's unwillingness to agree to a dismissal without prejudice, on April 15, 1997, Nagle sought the court's permission to allow it to voluntarily dismiss those claims without prejudice under Fed. R.Civ.P. 41(a)(2). Nagle argues that its actions satisfy Rule 11(c)(1)(A)'s requirement that the challenged claim be "withdrawn or appropriately corrected", and therefore, it is entitled to protection from Rule 11 sanctions under that rule's safe harbor provisions. The Court agrees. *See Photocircuits Corp. v. Marathon Agents, Inc.,* 162 F.R.D. 449, 452 (E.D.N.Y.1995) (where the court held plaintiff was entitled to protection under Rule 11's safe harbor provisions because it moved to voluntarily withdraw its complaint prior to the time defendants filed their Rule 11 motion for sanctions).

## III. Conclusion

For the foregoing reasons, the Court (1) **DENIES** Nagle's motion to voluntarily dismiss without prejudice its unfair competition claims; (2) **GRANTS** Ford's motion to dismiss or for summary judgment on the issue of unfair competition; (3) **DENIES** as moot Ford's motions to strike paragraph 5 of Barker's declaration, paragraph 7 of Schmid's declaration, and paragraph 2 of Coyne's declaration; (4) **DENIES** as moot Ford's motion for summary judgment on the issue of lost profit and price erosion damages; and (5) **DENIES** Ford's motion for Rule 11 sanctions against Nagle.

### JUDGMENT

The Court having reviewed the pleadings in this matter and being fully advised in the premises;

IT IS HEREBY ORDERED AND ADJUDGED that Defendant's motion for summary judgment on the issue of unfair compe-

tition is hereby **GRANTED** and the case is **DISMISSED.**

SO ORDERED.

